## Frederick J. Lee v. William Lake.

*Dedication of property to public uses.  Conveyance.*  The dedication of premises to public purposes, in a plat, acknowledged and recorded by one who did not own the property at the time, cannot have the effect of a conveyance, although he afterwards purchased it; and in the absence of subsequent facts and circumstances which could constitute an estoppel, he may reclaim the premises.

*Dedication—Estoppel—Acceptance.*  An ineffectual attempt to dedicate property to public uses in pursuance of the statute, will not of itself work an estoppel in favor of the public.  To have this effect, it must appear that some act was done by the public, subsequent to the making of the plat, and in reliance upon it, which would render it unjust for the proprietors afterwards to enforce a right of private ownership.

A dedication cannot be made out without the existence of a clear intent, on the part of the proprietors, to dedicate, and an acceptance of the property by the public.— *People v. Jones,* 6 *Mich.* 176.

Heard November 1st.  Decided November 11th.

Case made after judgment from Livingston Circuit.

The action was trespass, for alleged injuries to certain premises in the village of Howell.  The defendant plead the general issue, and gave notice of title in himself, and that the premises were a public square.  The facts, so far as they are necessary to an understanding of the legal questions involved in the case, appear in the opinion.

*Geo. V. N. Lothrop* for plaintiff.

1. The plat passed no title.  It was not made and acknowledged according to the statute.  To pass title by this statutory mode, the statute must be complied with in all respects: —*Laws* 1833 *p.* 531; *People v. Beaubien,* 2 *Doug. Mich.* 256; *Belleville v. Stookey,* 23 *Ill.* 441; *Fulton Village v. Mehrenfield,* 8 *Ohio St.* 440.

2. To pass a title to the public, by acts *in pais*, there must be acts of dedication, with intent to dedicate, by the owner, and acceptance by the public:—*People v. Beaubien*, 2 *Doug. Mich.* 256; *People v. Jones*, 6 *Mich.* 176; *Holdam v. Coldspring*, 21 *N. Y.* 474; *Penquite v. Lawrence*, 11 *Ohio N. S.* 274; *Brown v. Worcester*, 13 *Gray*, 31; *Holmes v. Jersey City*, 1 *Beasly*, 299; *Baldwin v. Buffalo*, 29 *Barb.* 396; *Logansport v. Dunn*, 8 *Ind.* 378.

In this case, I think not one act of dedication is shown. The sale of lots by the plat is not. They refer to the plat merely for description. They do not refer to the premises at all.

Still less are there any acts of acceptance by the public of these premises as a public square. They never had anything to do with it *as a public square*. They hired a court room in a church for one or two terms. They bought a building erected thereon by Crane, and kept their offices there for a few years. But they acquired a county site elsewhere, and since about 1843 have not pretended to use it for any purpose.

The use of it by the county was not as a public square, but only as a convenient place for their offices, till they had established a permanent county site.

The public never became bound to take care of the square, or liable for its care.

3. The admission of the *record* of the plat was erroneous. It was not a legal record. The sales, by reference to it, were no acts of dedication. Nothing of that character was either proposed or proven. It was, therefore, wholly inadmissible for any purpose in this case.

Had Crane sold lots bounded on what he called a public square, he might have given his grantees rights to have the premises kept open, though this would not have, in fact and law, made it a public square:—*Clements v. West Troy*, 16 *Barb.* 251; *Child v. Chappel*, 5 *Seld.* 246; *Hartshorn v. South Reading*, 3 *Allen*, 502; *Walker v. Worcester*, 6 *Gray*, 548.

4. If there is any evidence of an intent to dedicate, on the one hand, or to accept a dedication, on the other hand, of these

premises, it was that they might be used as a court house square.

To a partial extent, such a use was allowed, and it may be inferred, from the advantages to surrounding property, resulting from such use, that a donation of the premises to this use would have been perfected.

But this use seems to have been only partial, experimental and temporary. After a few years, this use was wholly abandoned, and a court house square acquired in another part of the village.

This restored the right of the proprietors as completely as if no steps towards acceptance had ever been taken:—*Commonwealth v. Fish*, 8 *Metc.* 239; *State v. Trask*, 6 *Vt.* 355.

*C. I. Walker* for defendant.

1. No error appears upon the part of the Court below of which the plaintiff can here take advantage.

It is no answer to the objection that the copy of the plat does not appear on the record, to say that the acknowledgment is defective, and that on this account the copy of the record thereof is inadmissible whatever it may contain.

Upon the supposition that the plat contains the *locus in quo* dedicated as a public square, even with the acknowledgment defective, the plat or a copy of it as recorded may be admissible evidence in connection with other evidence that the maker has constantly referred to such record in deeds conveying lots platted thereon and bordering on such public square. Especially would this be the case, if in such deeds the grantor had described such lot conveyed as fronting upon such public square.

2. The proprietors having dedicated said public square in such plat, and having sold lots with reference thereto, cannot resume and exercise acts of ownership over it, which would deprive their grantees in such deed of any privileges or benefits to be derived from having such public square left open:— *Trustees of Watertown v. Cowen*, 4 *Paige*, 510; *Sinclair v.*

*Comstock, Har. Ch.* 412; *Newport v. Taylor,* 16 *B. Mon.* 803; *Doe v. Trustees, &c.,* 7 *Ind.* 641; *Wyman v. Mayor,* 11 *Wend.* 499; *Kinnerty v. Shepley,* 15 *Miss.* 634; *State v. Trask,* 6 *Vt.* 355; *State v. Cullen,* 3 *Vt.* 530; *Cincinnati v. White's Lessees,* 6 *Peters* (*U. S.*) 431; *The People v. Beaubien,* 2 *Doug. Mich.* 256; *Wash. on Real Prop.* 459; 15 *Mo.* 634.

3. But even if the Court erred in admitting the plat as evidence, no exception was taken, and exceptions to the introduction or rejection of testimony must be taken during the trial, or they will not be available to the party complaining: —*Tidd's Practice,* 863; 1 *Burrill's Practice,* 456; *Wright v. Sharp,* 1 *Salk.* 288; *Lanuse v. Barker,* 10 *Johns.* 312; *Lyon v. Evans,* 1 *Ark.* 360; *Low v. Goldsmith, R. M. Charlton,* 288; *Randolph v. Alsey,* 8 *Mo.* 656; *Deloach v. Walker,* 8 *Miss.* 164.

This rule is as imperative when a case is tried before a Judge as when tried before a jury:—*Hunt v. Bloomer,* 13 *N. Y.* 342; *Magie v. Baker,* 14 *Ib.* 435; *Gilchrist v. Stevenson,* 7 *How. Pr.* 273; (*Cited* 3 *Abbott's Digest* 6.)

And the same principle is applicable to cases made under our statute:—*Trudo v. Anderson,* 10 *Mich.* 368; *Bliss v. Payne,* 11 *Ib.* 95.

In the following cases, the *record* shows that there were exceptions taken to the testimony objected to, although the reports of the cases do not show the fact:—*Rose v. Lewis,* 10 *Mich.* 483; *Brown v. Cady,* 11 *Ib.* 535.

4. The public square had been recognized, used and occupied as such for more than 22 years.

This is sufficient evidence to establish a dedication:—*Gould v. Glass,* 19 *Barb.* 179; *State v. Wilkinson,* 2 *Vt.* 480; *Doe v. Trustees,* 7 *Ind.* 641.

COOLEY J.

The only question presented by the record in this case is, whether the premises in controversy have ever been dedicated to public purposes. The plaintiff claims to be in the rightful

possession of them under a lease from F. J. B. Crane, whose title is deduced as follows: The United States to John D. Pinckney; John D. Pinckney to Edward Brooks and F. J. B. Crane, deed dated July 8, 1836; Edward Brooks to F. J. B. Crane, quit claim deed, dated October 15, 1853.

To show a dedication the defendant first put in evidence a certified copy of a plat of the village of Howell, recorded in the office of the Register of Deeds for the County of Oakland, dated and acknowledged the tenth day of November, 1835, by Brooks and Crane as proprietors, upon which is a block marked "Public Square," which is claimed to include the premises in controversy. The acknowledgment is not in accordance with the statute then in force for the acknowledgment of town plats, but conveyances were afterwards, within the same year, made by Brooks and Crane by reference to the recorded plat, and it is claimed by the defendant that the plat is thereby, and by force of the act of 1850 (*Comp. L.* § 1146), which would seem to have been designed to cure imperfections in such acknowledgments, made as effectual to vest in the public the right to grounds designated for public purposes thereon, as if the acknowledgment had been in legal form.

Whether a retrospective act of this description could have the effect designed, it does not become necessary to consider in the present case. The plat put in evidence was made by Brooks and Crane at a time when they do not appear to have had any interest in the land; and if the execution had been in all respects in due form, it could not have the effect which the statute gives to plats executed and acknowledged under its provisions. The statute then in force (*Laws of* 1833, *p.* 531) provided for the making, acknowledging and recording of town plats by the proprietors; and it is impossible to give the peculiar statutory effect of a present conveyance to a plat made by persons who at the time had no title to convey, even though they may afterwards have become the owners. And as the healing act of 1850 was confined in its scope to imperfect acknowledgments, it could not give effect to a plat which no

acknowledgment could have made effectual at the time it was made.

But as Brooks and Crane afterwards became the proprietors of the town site, it may become a question whether the circumstances do not estop them from asserting the invalidity of the plat. No estoppel, however, could spring from the mere ineffectual attempt to effect a statutory dedication; there must be circumstances in the case which make it inequitable to take advantage of the defect. No question arises in this case between Brooks and Crane and any of their grantees of lots upon the plat; and before an estoppel could be insisted upon on behalf of the public, it must be made to appear that some act was done by the public, subsequent to the making of the plat, and in reliance upon it, which would render it unjust for Brooks and Crane to afterwards assert and enforce a right of private ownership in this square. It becomes important, therefore, to inquire whether any such act on the part of the public is shown; and this question may properly be considered in connection with the subsequent conduct of Crane in reference to the premises, which, together with their use by the public, is supposed to establish a dedication by acts *in pais*.

It appears from the evidence in the case, that from the time when the plat was made the premises were commonly called the "public square," and were left unenclosed; that Crane upwards of twenty years ago erected a building upon them, which for a time was occupied by the County Clerk and Register of Deeds, for their respective offices; that a religious society also erected another building upon the square, which was used for religious meetings, but also, by consent of the society, and alternately with the village tavern, for the sessions of the Circuit Court; that this building was afterwards turned into a shop; that twenty years ago a blacksmith shop was put upon the square, though it does not appear how long it remained; that in 1842 the county purchased a Court House Square in another part of the village, to which the building containing the Clerk's and Register's offices, and which had

14 MICH.—c.

been bought of Crane, was removed; and that for some years past the premises have occasionally been used for public meetings, circuses, ball playing, fairs, &c. There is evidence, however, that on some occasions when thus used, the consent of Crane was applied for and obtained, and also that at times individuals leased of him, or used by his permission, portions of the land for their own purposes.

It can hardly be contended that these facts establish a dedication of the square to the public. A dedication cannot be made out without a clear intent to dedicate on the part of the proprietor, as well as an acceptance by the public :—*People v. Jones*, 6 *Mich.* 176. Leaving out of view the plat and the deeds referring thereto, no act of either Brooks or Crane is put in evidence which indicates an intent on their part to divest themselves of the ownership and control of this square for the use of the public. All the occupation there has been of the premises, has been with an assertion of private right, and the buildings erected have been owned as private property. The county was Crane's tenant in occupying his building for its public offices, and the tenant of the religious society when holding courts in its building. And if the plat evinces an intent on the part of the proprietors to devote this land to public use, it can at most only be regarded in the light of an offer to the public, which, if not accepted, is withdrawn when the proprietors put the land to a use which is inconsistent with the idea that the offer is any longer open.

But the case is entirely barren of evidence of acceptance by the public. We have already seen that the holding of county offices and courts in the buildings upon the square was in subordination to the private ownership, and the use which the public has subsequently made of the premises has not been exclusive in its character, and is only such as the open commons owned by individuals around our villages are always subject to. There is no evidence that any exclusive right was ever asserted by any public authority, and from the time when the court house and county offices were located in an-

other part of the village, nothing appears from which we can infer an intent to appropriate this square as public property, even if such an intent could have been gathered from the prior use.

It is quite probable that when the plat was made by Brooks and Crane they hoped to obtain a location of the county buildings upon this square; and that when the county authorities decided to locate elsewhere, the decision was looked upon as a refusal to accept the offered dedication. However that may be, and whatever may have been the impression, on the part of the public, of the nature of the offer made by the plat, it is apparent that the facts proved are inconsistent with any intention on the part of Crane for several·years past to make the dedication; and that there has been no act on the part of the public which could either amount to an acceptance, or which could bind Crane on the principle of equitable estoppel. The judgment of the Court below must therefore be reversed, and judgment be entered in this Court for the plaintiff, for nominal damages, and the costs of both Courts.

CHRISTIANCY and CAMPBELL, JJ., concurred.

MARTIN, Ch. J., *dissenting*:

I do not concur with my brethren. I think the dedication in this case is that which is usual, and all that is expected in rural villages, by the community, and all required by law. See *City of Cincinnati v. White's Lessees*, 6 *Peters U. S.* 431; *City of Logansport v. Dunn*, 8 *Ind.* 378; *Doe v. Attica*, 7 *Ind.* 641.